UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

                                                        Case No. 08-75318 (DTE)

       PATRICIA DOMBROFF,

                                                     Chapter 7

                       Involuntary Debtor.
----------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER

*Appearances*:

                      Matthew G. Roseman, Esq.
                   *Attorneys for Involuntary Debtor*
              Cullen and Dykman Bleakley Platt LLP
                 100 Quentin Roosevelt Blvd
                     Garden City, NY 11530


                       Robert J. Spence, Esq.
                 *Attorneys for Petitioning Creditor*
                       McBreen & Kopko
                       500 North Broadway
                            Suite 129
                           Jericho, NY 11753


Honorable Dorothy Eisenberg, United States Bankruptcy Judge

On September 26, 2008, Palmieri & Castiglione, LLP ("Palmieri" or "Petitioning Creditor") filed an involuntary chapter 7 petition against Patricia Dombroff ("Dombroff" or the "Debtor"). Palmieri was the sole filing creditor. Subsequently, on November 10, 2008, Dombroff filed a motion to dismiss the involuntary petition. At a hearing held on January 22, 2009 the Court granted the motion to dismiss because it concluded that it was previously a two party dispute and that the appropriate forum was the state court. The case was dismissed pursuant to Court order on February 13, 2009 ("Dismissal Order").

The Dismissal Order stated that the Court retained jurisdiction to consider Dombroff's request for costs and reasonable attorneys' fees in accordance with 11 U.S.C. § 303(i)(1)(A) and (B). Thereafter on March 4, 2009, Dombroff's counsel filed the instant motion for costs and attorneys' fees, Palmieri filed opposition on April 13, 2009, and a hearing was held on September 24, 2009.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. § 1409(a).

**Background:**

### *I.*     *The Prepetition Relationship between Dombroff and Palmieri*

Prior to the filing, both the Debtor and her now ex-husband were charged by the Suffolk County District Attorney's Office (the "District Attorney") due to their connections to a scheme perpetrated by the ex-husband in which he defrauded customers of his brokerage firm.[1] Mrs. Dombroff was indicted because she was the sole shareholder of the company. The Palmieri firm was retained by both Dombroffs, and ultimately succeeded in getting Mrs. Dombroff acquitted.[2]

---

[1] Mr. Dombroff had been promising commercial mortgages to customers and was paid upfront fees, but he would not deliver on the promised loans.
[2] Mr. Dombroff was ultimately convicted of defrauding customers of his brokerage and was incarcerated.

2

Simultaneously with the criminal prosecution, the District Attorney brought a civil forfeiture action against the Dombroffs, and Mrs. Dombroff was named as a non-criminal defendant. The state court granted the District Attorney an ex parte Order of Attachment, and attached $1.2 million in marital assets, as well as Dombroff's residence located in Dix Hills, New York (the "Residence").[3] In the course of Palmieri's representation of Dombroff for the criminal and civil case, Palmieri was owed legal fees in the amount of $82,874.00 plus interest. However, Mrs. Dombroff failed to remit payment for the amounts that she owed to the firm. Ultimately in January 2005 Palmieri commenced state court litigation to recover the fees and costs (the "Palmieri State Court Litigation"). Nearly a year later, in November 2005, a default judgment in the Palmieri State Court Litigation was entered against the Debtor for the full amount requested by Palmieri with interest thereon. Palmieri's papers state that this amount has increased to approximately $130,000.

Prior to the commencement of the Palmieri State Court Litigation, in December 2004 PJMJ Realty Corp. ("PJMJ") purchased the mortgage on the Residence. The mortgage was purchased by PJMJ for $231,000.00 with interest to run at 6% on the balance (the "PJMJ Mortgage"). The Debtor is currently working as an administrative assistant for PJMJ Services, which is an entity that is related to PJMJ Realty Corp.

In November 2006, Palmieri filed a petition to direct a Sheriff's sale of the Residence, and eventually, in February 2008, Palmieri and the District Attorney entered into a stipulation in which the District Attorney allowed Palmieri to take priority over the District Attorney's Order of Attachment, and proceed with the Sheriff's sale. In an apparent attempt to work out an

---

[3] The Residence was purchased by the Dombroffs in 1994 for $410,000.000. At the closing, the previous owner, Leonard D'Alberti, provided the existing mortgage of $390,000.00, which remained on the property.

arrangement with the Debtor to pay off the amount owed, Palmieri held off on culminating the foreclosure of the Residence.

Simultaneously with the actions taken by Palmieri, PJMJ, as the holder of the mortgage on the Debtor's Residence, initiated a foreclosure proceeding on May 3, 2007 (the "PJMJ Foreclosure Proceeding"). By this time, apparently because the Debtor made no payments to the mortgage, the balance on the PJMJ Mortgage had increased to approximately $636,000.00. On June 13, 2008 a judgment of foreclosure was entered in the PJMJ Foreclosure Proceeding. The sale that was scheduled to be held was stayed upon Palmieri filing the involuntary petition against the Debtor on September 26, 2008.

## II.    *The Motion to Dismiss and the Motion for Fees*

On November 10, 2008, Dombroff filed a motion to dismiss the involuntary case on the grounds that she had more than 12 creditors and as such the involuntary petition was defective. Thereafter on January 9, 2009 Palmieri filed a motion to amend the petition in order to add two other creditors: Unifund CCR Partners and Capital Recovery II.[4] Opposition was filed by both sides with respect to the other's motion and both motions were returnable on January 22, 2009.

At the January 22, 2009 hearing Palmieri argued that one of the reasons it filed the involuntary petition was because it wanted a case trustee to be appointed to investigate the circumstances of the PJMJ Mortgage, as well as the relationship between PJMJ and Dombroff. Debtor's counsel argued that this was an inappropriate use of the bankruptcy court and that the petition was filed due to the failure of Palmieri itself to contest the PJMJ Foreclosure Proceeding in the state court.

---

[4] Unifund CCR Partners alleged to hold a claim in the amount of $15,675.00 and Capital Recovery II alleged to hold a claim of $3,145.00.

At the conclusion of the hearing, the Court determined that the involuntary case was primarily a two party dispute, and that the appropriate avenue for Palmieri was to seek relief in the state court where all of the prior issues and matters had been previously heard and any new issues in regard to the foreclosure proceeding against the real property could be heard. At no point did the Court state that the petition was filed in bad faith. An order dismissing the involuntary petition was signed on February 13, 2009, and in the order the Court retained jurisdiction to consider Dombroff's request for costs and attorneys fees. Thereafter after much back and forth on March 4, 2009, Dombroff's counsel filed the instant motion against the Petitioning Creditor seeking attorneys' fees, costs and sanctions in the amount of $32,306.00. After several adjournments, the Court held a hearing on the motion on September 24, 2009 (the "Fees and Sanctions Motion").

In opposition to the Fees and Sanctions Motion, Palmieri's counsel argued that the petition was filed in good faith because there were more than three creditors whose aggregate claims satisfied the Bankruptcy Code's ("Code") requirements under § 303, and Dombroff was not paying her debts as they came due. In further defense of the involuntary filing, Palmieri's counsel argued that an improper relationship existed between Dombroff and PJMJ and a trustee was necessary to investigate. As support for this allegation, Palmieri points to the fact that (1) Dombroff currently works as an administrative assistant for PJMJ Services, which is an entity related to PJMJ Realty Corp., (2) Dombroff did not contest the PJMJ foreclosure in the same manner that she contested Palmieri's attempts to collect the legal fees that it was owed, and (3) the balance due on the mortgage rose from $231,000 in 2004 to $636,000 in 2007. Palmieri's counsel also argued against the amount sought in the motion for sanctions. Specifically, counsel argued that over 104 hours were spent in the case, and that over 60 of those hours were

performed by an individual at the firm who had not yet been admitted as a practicing attorney, Ms. Ward, which caused the total amount to be higher than it would have been had an attorney with bankruptcy experience performed the tasks.

Dombroff's counsel responded that as to the relationship between Dombroff and PJMJ, no evidence of any improper relationship was put before the Court and that Dombroff's employment with PJMJ Services was disclosed in her papers and was not being concealed. Counsel stated that Palmieri failed to conduct any discovery during the PJMJ Foreclosure Proceeding into the relationship between Dombroff and PJMJ, and no evidence was provided to support their allegations. As such, these were just conclusory allegations and Palmieri was attempting to get a second bite at the proverbial apple. As to the allegations regarding the fees and billing, Dombroff's counsel argued that the fees were incurred in an appropriate manner, were billed in a manner consistent with the firm's rates, and were consistent with other cases that the firm had worked on.

At the conclusion of the hearing the Court again reiterated its reasons for dismissing the case. The Court also noted that the decision to dismiss the involuntary petition was not clear on the merits but was at the discretion of the Court, and that the petition was not filed in bad faith. The petitioning creditors had met all of the conditions of section 303(b). The Court now looks to the papers submitted to determine whether fees should be granted, and if so in what amount.

**Discussion:**

Bankruptcy Code § 303(i) states:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court *may* grant judgment –
    (1) against the petitioners and in favor of the debtor for –
        (A) costs; or
        (B) a reasonable attorney's fee;

>   (2) against any petitioner that filed the petition in bad faith, for –
>     (A) any damages proximately caused by such filing; or
>     (B) punitive damages.

11 U.S.C. § 303(i) (2009) (emphasis added).

Just because the Court dismissed the involuntary petition does not mean that sanctions and fees are automatically granted against the petitioning creditors. It is settled law that it is within the discretion of the court as to whether or not it will grant a request for sanctions and fees. *See e.g., Banco Popular de Puerto Rico v. Colon* (*In re Colon*), 2008 Bankr. LEXIS 3960 (B.A.P. 1st Cir. Nov. 21, 2008); *Lubow Mach. Co. v. Bayshore Wire Prods.* (*In re Bayshore Wire Prods.*), 209 F.3d 100, 105 (2d Cir. N.Y. 2000); *Baker v. Simpson*, 2009 U.S. Dist. LEXIS 73098 (E.D.N.Y. Aug. 18, 2009); *In re Squillante,* 259 B.R. 548, 554 (Bankr. D. Conn. 2001); *In re Trina Assocs.*, 128 B.R. 858, 873 (Bankr. E.D.N.Y. 1991). As the bankruptcy court in *In re Allen Rogers & Co.* noted, if Congress wanted fees and sanctions to be awarded in every case where an involuntary petition was dismissed the Code would state "[t]he court *shall* grant costs and reasonable attorney's fees." 34 B.R. 631, 632 (Bankr. S.D.N.Y. 1983) (emphasis added).

The Court previously found that the involuntary petition was not filed by Palmieri in bad faith, which precludes Dombroff from seeking relief under § 303(i)(2). *See In re Reid*, 854 F.2d 156, 160 (7th Cir. Ill. 1988) ("Section 303(i) distinguishes between good and bad faith petitions with respect to the type of recovery that may be awarded…."); *see also In re Walsh*, 306 B.R. 738, 742 (Bankr. W.D.N.Y. 2004).

Thus, the only avenue for Dombroff to pursue relief is under § 303(i)(1) because that section does not require a bad faith finding as a prerequisite to the Court awarding costs and attorneys fees. *See Lubow Mach. Co. v. Bayshore Wire Prods.* (*In re Bayshore Wire Prods.*), 209 F.3d 100, 105 (2d Cir. N.Y. 2000) (upholding the bankruptcy court's decision to award fees

and costs under § 303(i)(1) but reversing its bad faith finding and award of damages under § 303(i)(2)).

The bankruptcy court in *In re Squillante* noted that there is a "a presumption that costs and attorney's fees will be awarded to the alleged debtor following dismissal of an involuntary petition; and that the burden of proof is on the petitioner to justify a denial of costs and fees." 259 B.R. 548, 554 (Bankr. D. Conn. 2001); *see In re Ross*, 135 B.R. 230, 238 (Bankr. E.D.Pa. 1991); *Scrap Metal Buyers of Tampa, Inc*., 253 B.R. 103, 110 (M.D. Fla. 2000).

It is appropriate for a court to consider the totality of the circumstances when evaluating whether or not fees and costs are appropriate. *See In re Mt. Dairies, Inc*., 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007); *In re Squillante*, 259 B.R. 548, 554 (Bankr. D. Conn. 2001). Under the "totality of the circumstances" test the court looks at the merits of the involuntary petition, the conduct of the debtor, the reasonableness of the actions taken by the petitioning creditors and the motivation and objectives behind the filing of the petition. *See In re Squillante*, 259 B.R. at 554 (holding that based on the totality of the circumstances the involuntary debtor's request for sanctions and costs were denied); *see also In re Synergistic Techs., Inc*., 2007 Bankr. LEXIS 2660 (Bankr. N.D. Tex. Aug. 6, 2007) (stating that courts should look at the "'totality of circumstances' and the reasonableness or unreasonableness of the petitioning creditor's actions, motives, and objectives.").

As the Court noted on the record at the September 24, 2009 hearing, the involuntary petition met the standards under § 303(b), and was not filed in bad faith. As to Palmieri's objectives and motives, in the papers and at the hearing, Palmieri raised several questions as to the circumstances surrounding the PJMJ Mortgage. Dombroff's counsel argued that these were questions that could have been raised in the PJMJ Foreclosure Proceeding. Regardless, it is

8

evident from these allegations that Palmieri had genuine concerns about the relationship between Dombroff and PJMJ. However, no evidence of an improper relationship was provided to the Court by Palmieri. At the same time no evidence of any improper acts by the Petitioning Creditor was placed before the Court. The arguments were speculative and unsupported.

The Court believes that the totality of the circumstances show that Palmieri's motivation to have a trustee appointed to investigate its allegations was not improper, and the Court does not attribute any frivolous motives or designs on the part of Palmieri. In fact, two other petitioning creditors joined the Petitioning Creditor in his request for an involuntary petition for the chapter 7 relief against the Debtor. The Court believes it is the state court that would be the appropriate forum, and the state court may be able to provide some guidance for the issues raised by Palmieri. While their intentions may not have been invidious, the fact remains that Dombroff did incur fees and costs related to defending herself against the involuntary petition.

In an exercise of its sound discretion, the Court does find that some fees are appropriate, but only as they relate to Dombroff's defense against the involuntary filing. As to the fees and costs requested, Debtor's counsel, Matthew Roseman, is a highly respected and knowledgeable bankruptcy attorney. He indicates that his firm billed his fees at a rate of $470 per hour. Without questioning this hourly fee, it must be based on the fact that he is knowledgeable in the bankruptcy field, and needs little or no repeated research of the ordinary and uncomplicated issues of law. Upon a review of his time records it appears that he claims he had to review the case law on October 1, 2008, October 21, 2008, October 22, 2008, October 23, 2008, October 24, 2008, October 30, 2008, and November 5, 2008. However, the law on involuntary filing against an individual is clear, concise and uncomplicated and should not have required persistent review of the law.

In the exercise of its discretion to determine what the appropriate amount of compensation should be awarded, the Court can consider several factors, such as the time spent on services performed, the rates charged for those services, and the individual's skill and experience in the bankruptcy field. The practice of law as a profession is subject to many areas of accepted practice. As a rule, a party, no matter how well trained or schooled, is not an attorney until such party is admitted to the bar of the state in which such person is legally authorized to practice. Such a person may be billed at the rate of compensation paid to a paralegal but not at the rate of an attorney. The Court notes that Ms. Ward was not an admitted attorney during the course of her work on the instant case, and has taken into consideration her experience and the services that she performed.

Thus, based on the Court's calculations and evaluations, the appropriate amount to be awarded to the Debtor on behalf of legal fees and costs is $7,500.00.

### Conclusion:

In accordance with the above findings and conclusions of law, pursuant to section 303(i)(1) (A) and (B), the Court hereby grants Dombroff's motion for reasonable attorneys' fees and costs in the amount of $7,500.00.

Dated: Central Islip, New York
       November 24, 2009

                                        *s/ Dorothy Eisenberg*
                                        Judge Dorothy Eisenberg
                                        United States Bankruptcy Judge